## Case No. 5,931.

HALL et al. v. EQUATOR MINING & SMELTING CO. et al.[1]

[Morr. Min. Rights, (3d Ed., 1879) 282.]

Circuit Court, D. Colorado.[2]

MINES AND MINING — INTERFERING LOCATIONS — PRELIMINARY INJUNCTIONS — PRIORITY OF PATENT—INTERSECTING AND UNITING VEINS — CONFLICTING STATUTES.

[1. A preliminary injunction preserving mining property in statu quo will not be dissolved where there is a strong controversy in which the right of neither party as yet clearly appears.]

[2. In the case of interfering locations, for which patents have lawfully issued upon due notice to adverse parties, priority of right is determined by priority of patent, and not by priority of location.]

[3. The rights of owners of cross or intersecting veins or lodes are determined, not by Rev. St. § 2322, but by section 2336, which, as section 14 of the original act of 1872 (17 Stat. 96), came last in order of arrangement. Therefore the party having priority of title (even by patent) cannot take all the ore of the cross vein found within his lines, but is limited to that contained in the space of intersection.]

[4. The rights of parties owning veins which unite in their downward course are also controlled by Rev. St. § 2336, and in such case the

---

[1] [See note at end of case.]

[2] [For proceedings in supreme court, see note at end of case.]

oldest patent will take the vein below the point of union, including the space of intersection.]

[5. As between conflicting sections of the same statute, the last in order of arrangement will control.]

[This was a bill in equity by George W. Hall and others against the Equator Mining & Smelting Company and others. Heard on motion to dissolve an injunction.]

HALLETT, District Judge. Plaintiffs own the Colorado Central Lode by deed from Wm. P. Linn, to whom a patent for the lode was issued July 21st, 1875. The entry and purchase of the lode in the local land office was on the 4th day of August, 1874. Defendants hold the Equator Lode by the like title, which originated in the local office on the 2d day of November, 1875. They aver that their lode was discovered and located in the year 1866, long before the Central Lode was known, and that they have occupied and worked it since that time. And this appears to be conceded by plaintiffs, so that defendants have the senior location, while plaintiffs have the senior patent. These locations are in the form usual in Griffith district, 50 feet in width; and one of them is 1400 feet in length and the other 1500 feet in length. Their general course is from east to west, but they have a difference in direction of about 12 degrees. The east end of the Colorado Central overlaps the west end of the Equator, so as to have some small part of each projecting beyond the north side-line of the other. As delineated on the plats filed in the cause, it appears that the Equator projects in this manner rather more than the Central; but it is sufficiently accurate for any purpose we have now in view to say, that each lode extends beyond the north side-line of the other location about 240 feet. From this explanation it will be seen that these locations were made as and for different lodes, crossing each other with an acute angle of about 12 degrees, and each extending beyond the line of the other for a distance of more than 200 feet. When Linn, who is plaintiff's grantor, applied for a patent for the Central Lode, some controversy arose between him and the Equator Company as to the ground included in both locations, and Linn was successful in that controversy, so far as to obtain title to the tract in dispute. The effect of the patent in that particular, is a question to be considered on this motion.

The present controversy relates to a body of ore found in or under the east end of the Central location, and extending thence westward to and across the intersection with the Equator location. Some parts of this ore body appear to the north and south of the side lines of the Central location, but the main part of it is situated in that location. This circumstance is not controlling if it belongs to a lode which has its top and apex elsewhere, for by the act relating to mines, veins and lodes may be pursued in their downward course into the adjoining territory. Rev. St. § 2322. As to the linear course of the lode, the rule is otherwise, and the claimant is in that respect restricted to the lines of his survey. Patterson v. Hitchcock, 3 Colo. 533; Wolfley v. Lebanon Min. Co., 4 Colo. 112. But as to all veins that come to the surface and have anything like a vertical position in the earth, it is undoubtedly true that ownership of the outcrop will carry all that may be found below in the same vein or lode however it may depart from the territory described in the patent, so that a principal question of fact and perhaps the only one of importance in this case, is the position of the top or apex of the lode, of which the body of ore in dispute is a part, with reference to the territory described in the patents. On this point, the pleadings and affidavits on file are not at all satisfactory. In the first place, it is to be observed that the statements there made have not been subjected to the test of the cross examination. What is now distinctly affirmed on each side may be very much modified when that test shall be applied. And this seems to be necessary, in order to collect the truth from the conflicting statements. Plaintiffs maintain that they have a lode in their territory which extends beyond their east line, and at a point 80 feet or more therefrom, it is divided into two parts one of which was discovered and located by defendants as the Equator Lode. That defendants' location covers only a branch or offshoot of the true fissure, which lies some distance to the north of their discovery shaft. Defendants have put in affidavits to show that through and by many shafts and levels they have ascertained that their lode follows the line of their location. And that, in particular, the shaft and level through which they have reached the body of ore in dispute, follows the south wall of a lode which clearly comes to the surface in their territory. As was anticipated when the bill was removed into this court, there is no agreement between the parties as to the structure of the lode or lodes and their outcrop. The affidavits suggest several theories without giving certainty to any of them. There may be two veins uniting in their onward course at some point east of the Central location, and thence going westward as one vein, with an outcrop in that location, or south of it; and the vein may be so wide at the top as to enter both locations at the point where this controversy arose; and there may be two veins uniting on this strike, or on this dip, at the very place in dispute. But as to all this, it is only necessary to say that the facts are not sufficiently stated to lead to a just conclusion; and if they were so stated, the consideration of them primarily belongs to another forum, although we could consider them with a view to ascertain whether there is ground for equitable jurisdiction.

As the case is now presented, we have only to await the result of the action of ejectment;

and we do not, meanwhile, nicely balance theories and probabilities, with a view to determine the right to this injunction. It is enough that there is a strong controversy in which the right of neither party clearly appears. On that alone we interfere to preserve the property for him who may at law prove his right to it. What has been said, relates mainly to a question of fact, which it is the opinion of the court should be tried by a jury. Some general remarks in addition, as to the proper construction of the act of congress, may assist the parties in that investigation. As already stated, these locations specify and define lodes crossing each other, without other connection than such as arises from the intersection. Assuming that these are lodes crossing each other in the manner indicated by the locations the question arises, what right has each of the parties within the lines of both locations? And here we must recall the fact that plaintiff's grantor although his lode was not first discovered, was the first to apply for and obtain a patent. In that way he secured the exclusive right to the surface ground described in the patent and all lodes having their out-crop in that domain which would by the terms of the act pass with the grant. If the proceedings to obtain the patent were regular and without fraud in the patentee that instrument is in his hands and in the hands of the grantee full evidence of title as against all antecedent claims to the same property.

By the act respecting mines (Rev. St. § 2325) notice for patent is required to be given to adverse claimants by posting over the claims and through the columns of a newspaper, and opportunity is given to such claimants to contest with the applicant the title of the property. Section 2326. The object of these provisions is to secure a settlement and adjustment of all controversies respecting the property in order that the patent may be issued to the rightful owner; and it is declared in the act that if no adverse claim shall be filed within the time specified for giving notice it shall be assumed that no such claim exists. Without such declaration the meaning of the statute would be clear enough, for when it is required that notice shall be given and notice is given accordingly no one having an interest in the subject can be allowed to disregard it. With that provision there is no room for discussion as to the conclusive effect of a patent on all questions affecting the title which are pending at the time it is issued. Eureka [Consol. Min. Co. v. Richmond Consol. Min. Co., Case No. 4,548]; Wolfley v. Lebanon Min. Co., 4 Colo. 112.

In this instance it is said that suit was brought against Linn to recover the ground included in both locations, and plaintiff suffered a non-suit. But that is not a circumstance to be considered; unless it shall be alleged that the result of the suit was favorable to the Equator Company the land office disregarded it in issuing the patent. The patent furnishes at least prima facie evidence that notice was given as the act requires, and that every other necessary step towards procuring it was properly taken. And if notice was given the defendant company was embraced in it, and whether they neglected to assert their claim, or asserted it unsuccessfully, the result is the same; in either case they cannot now impeach the patent upon the ground that they have a better title to the property described in it than the patentee. This rule extends as well to the date of the discovery and location of the claim as to other matters affecting the title. Of two adverse locations made, that which is prior in time is undoubtedly prior in right. But this must be shown at the time and in the manner pointed out by the statute or the right will be waived. And after patent the patentee will be regarded as having the elder as well as the better title in all respects. This is true as to all things that are the subject of the grant but there still remains a question as to how much and what part of cross and intersecting veins are embraced in a patent.

The general language of section 2322 seems to comprehend all lodes having their tops and apexes in the territory described in the patent whether the same lie transversely or collateral to the principal lode on which the location was made. Considered by itself, such would be the meaning and effect of that section. But there is another section relating to cross-lodes, which is of different import. It was numbered 14 in the original act of 1872 [17 Stat. 96],—section 2336, Rev. St. (2d Ed.),—and is as follows: "Where two or more veins intersect or cross each other, priority of title shall govern, and such prior location shall be entitled to all ore or mineral contained within the space of intersection: but the subsequent location shall have the right of way through the space of intersection for the purposes of convenient working of the mine. And where two or more veins unite, the oldest or prior location shall take the vein below the point of union, including all the space of intersection." It will be observed that by this section the first locator and patentee of a lode gets only such part of cross and intersecting veins as lie within the space of intersection to the exclusion of the remainder of such lodes and veins lying within his own territory. So far this section is in conflict with section 2322, before mentioned, and the matter of precedence between them is settled by an arbitrary rule established long ago. As between conflicting statutes, the latest in date will prevail, so between conflicting sections of the same statute, the last in the order of arrangement will control. Bac. Abr. Stat. D; Dwarris, 156, note; Brown v. County Com'rs, 21 Pa. St. 37; Smith v. Moore, 26 Ill. 392.

The presumption that one section of a

statute was adopted before another seems to be very slight, and perhaps this rule has no other merit than to afford the means of solving a difficult question. But the rule appears to be well established, and to be applicable to the present case. It gives to section 2336, Rev. St., or section 14 as it stood in the original act, a controlling effect over the prior section, and limits the right of the first locator of a mine in and to cross and intersecting veins to the ore which may be found in the space of intersection. If there are in fact two lodes crossing each other in these locations, the plaintiffs having the elder title by patent have the better right, but it is limited as last stated. So much as to the theory that there are two lodes intersecting in their onward course. And if there are two veins uniting in their downward course the same section is applicable with the addition of what has been said relating to the patents. If it shall appear that there is but one lode at the point in dispute, it will depend on the out-crop of that lode. If it shall be found within the lines of one of the patents and without the lines of another, the rule will be plain. He who can claim the top and apex of the lode will also have good right to all that lies below, although it may enter the land adjoining. If there is but one lode with an out-crop extending into both locations, questions will be presented which have not been discussed and should not now be considered. As to the latter, it can be better determined when the fact shall be shown.

The motion will be denied with leave to defendants to renew it, if there shall be any delay in prosecuting the action of ejectment.

[NOTE. On the trial of the action of ejectment by Hall and Marshall against the Equator Mining & Smelting Company judgment was given for defendant (unreported; cited in dissenting opinion of Boreman, J., in Bullion, Beck & Champion Min. Co. v. Eureka Hill Min. Co., Utah, 11 Pac. 515, 536). Thereupon plaintiffs moved for and obtained a new trial as of right. Upon this second trial, judgment was given for plaintiffs after Miller, Circuit Justice, had charged the jury in the following words, which are here published from the records of the court: "The court charges the jury: That here is introduced, both by plaintiffs and defendant, evidence tending to prove that the claims of both parties are located on the same vein or lode of mineral-bearing rock in place. the general apex or upper surface of which is about one hundred feet wide. If the jury believe this to be true, then I instruct you as the law of this case that plaintiffs having the prior title from the United States to that portion of this lode within the lines of their patent, extended vertically downwards to the earth's center, and the defendant having contested plaintiffs' right to receive a patent for the parts of the lode in controversy in the court of the territory according to the act of congress on that subject, and failed in that contest, and having accepted and read in evidence a patent for their own claim which expressly excepts out of its granting clause the interfering part in plaintiffs' said patent, the law of the case is for the plaintiffs, and they are entitled to all the mineral found within the side lines of their patent extended vertically downward." Cited in dissenting opinion of Boreman,

J., in Bullion, Beck & Champion Min. Co. v. Eureka Hill Min. Co., supra.

[Thereupon defendant moved for a new trial as of right. Upon the question whether this motion should be granted under the Colorado Code the circuit justice and the district judge were divided in opinion, and certified the matter to the supreme court, after overruling the motion (unreported). Defendant also sued out a writ of error. The supreme court ruled that the defendant could demand a new trial as of right, and reversed the judgment of the circuit court for error in overruling the defendant's motion, and remanded the cause for a new trial, without considering the defendant's assignments of error. 1 Sup. Ct. 128. 106 U. S. 86. The proceedings upon the third trial are not reported.]